# FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 384-0258
Writer's email: michael@fishertaubenfeld.com

March 30, 2022

**VIA ECF**
Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Lopez v. El Mariachi Holding Corp et al.
Case No.: 21-CV-1204 (AMD)(TAM)

Dear Judge Merkl:

We represent Plaintiffs in this matter. The parties write to respectfully request that the Court approve their settlement as fair and reasonable and so order the Stipulation of Dismissal that is attached as **Exhibit 1**.

**1. Background to the Case and Procedural History.**

Plaintiffs are former employees who worked for Defendants, a small restaurant in Queens, NY and its owner/operator, but were not properly paid under the FLSA or New York Labor Law ("NYLL"). Plaintiff Lopez worked for Defendants from July 2014 until March 30, 2020 as a prep cook. Plaintiff Salgado worked for Defendants from 2007 until March 30, 2020. Plaintiffs allege that they regularly worked more than 50 hours a week and that Plaintiff Lopez often worked more than 10 hours in day. They further allege, however, that Defendants paid them a set salary no matter how many hours they worked. That salary ranged from $375 and $500 for Plaintiff Lopez and $800 and $950 for Plaintiff Salgado. Finally, Plaintiffs allege that Defendants failed to provide them with wage notices and accurate wage statements that recorded their hours worked and therefore violated NYLL §195.

Plaintiffs filed this case in March 2021. Defendants filed an answer, and the parties attended an initial conference before the Court. Defendants then provided pay records for Plaintiffs to facilitate settlement. Those records recorded that Plaintiffs worked no more than 40 hours a week. Defendants also provided records showing that Defendants' restaurant suffered greatly during the pandemic and had limited resources.

Plaintiffs disputed Defendants' records and calculated their minimum wage and overtime damages under the FLSA and NYLL to total $237,735.35. Plaintiffs also claimed they are owed an equal amount in liquidated damages and $10,000 each in NYLL §195 damages. Finally, Plaintiff Lopez asserted that he was owed $19,992.86 in spread-of-hours damages.

Defendants vigorously disputed these calculations, but the parties attended a court-ordered mediation on February 11, 2022. During the mediation, the parties continued to negotiate and ultimately Defendants agreed to pay $125,000 within 30 days of court approval. **Exhibit 2.** Under the agreement, Plaintiffs will receive $82,579.83, and my firm will receive $42,420.17, which is comprised of $1,130.26 in costs, plus one-third of the settlement amount net of costs ($41,289.91).

The parties' Settlement Agreement provides that Plaintiffs and opt-in Plaintiffs would receive half their payment via an IRS W-2 form and the remaining amount via an IRS 1099 form. This payment is secured by a confession of judgment. The Settlement Agreement contains a release of only claims asserted by Plaintiffs. See, Paragraphs 1 and 2. There is no confidentiality or nondisparagement clauses in the agreement.

## 2. The Court Should Approve the Settlement.

The settlement, which was reached with the assistance of a court-appointed mediator, is fair and reasonable, and the parties therefore request that the Court approve it. First, the recovery itself is significant. Plaintiffs are receiving approximately 35% of their FLSA and NYLL damages (aside from NYLL §195 violations) after deducting for fees and costs. Crucially, Plaintiffs are receiving the settlement payments now before any significant discovery has taken place, and prior to depositions, motion practice, trial, and appeals, all of which would likely take years. Further, Plaintiffs avoid substantial risks. Primarily, Defendants' records contradict Plaintiffs' recollection of their hours worked, and if a jury accepted Defendants' records, Plaintiffs' damages would be far smaller. But most importantly, Defendants have credibly established significant financial difficulties, like many restaurants they have suffered during the last two years. Plaintiffs bear the substantial risk that if they litigate this case to the end, Defendants would simply declare bankruptcy and Plaintiffs would receive nothing. Settlement allows them to receive a significant amount of money now rather than run the risk of receiving less or even nothing down the road.

Further, none of the terms in the agreement are problematic. The releases are limited to only the claims in the lawsuit. Moreover, there are no nondisparagement or confidentiality clauses. The agreement therefore is fair and reasonable.

The attorneys' fees are fair and reasonable as well, as both the hourly rates and the hours expended are reasonable. Under the agreement, my firm will receive $42,420.17, which is comprised of $1,130.26 in costs, plus one-third of the settlement amount net of costs ($41,289.91). Courts in FLSA cases often award fees of "one-third

2

of the total settlement amount." Najera v. Royal Bedding Co., LLC, No. 13-CV-1767 NGG MDG, 2015 WL 3540719, at *2 (E.D.N.Y. June 3, 2015) (collecting cases approving fees totaling 33.3%); Shamsundar v. FCS Grp. LLC, No. 18CV2514KAMLB, 2019 WL 3716198, at *4 (E.D.N.Y. May 22, 2019) (noting that "[c]ourts in this district generally find 33% of the overall settlement, mirroring the one-third contingency fee arrangement to be reasonable."); Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020) (same); Merino Leon v. Univ 45 Fruit & Vegetable Corp., No. 19-CV-8266 (RA), 2020 WL 1322580, at *2 (S.D.N.Y. Mar. 20, 2020) (same).

Although Plaintiffs are requesting a multiplier of 3.65, that multiplier is reasonable because this case settled early before motion practice or significant discovery and the parties actively worked together to minimize costs. Courts have recognized that reducing fees below the typical one-third because of early settlement has the "potential to create a disincentive to early settlement." Hyun v. Ippudo USA Holdings, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)); Riveras v. Bilboa Rest. Corp., No. 17-CV-4430-LTS-BCM, 2018 WL 8967112, at *1 (S.D.N.Y. Dec. 14, 2018) (awarding a 6.7 lodestar because "[a]pplying a lower lodestar multiplier may result in penalizing plaintiffs' counsel for achieving an early settlement."); Pinzon v. Jony Food Corp., No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (awarding a 5.23 multiplier and "recognizing the importance of encouraging the swift resolution of cases . . . and avoiding creating a disincentive to early settlement — particularly where such settlement has provided Plaintiff with a substantial and speedy result."); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (noting that the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."). Indeed, early settlement benefits everyone involved in a lawsuit: plaintiffs got paid earlier, defendants save unnecessary attorneys' fees, and the court preserves scarce judicial resources. Plizga v. Little Poland Rest. Inc., No. 15CV08820LAKBCM, 2016 WL 9307474, at *5 (S.D.N.Y. July 18, 2016) (the parties "reached a settlement agreement in principle—without the aid of the Court—before the initial pretrial conference, which was never held. The settlement negotiations themselves were "extensive," however, and based in part on payroll records and other documents provided informally by defendants. There is much to be admired in this approach, which conserves both attorney time and judicial resources.")

Regarding calculating the lodestar, as will be explained below, Plaintiffs' lodestar is $11,177.00.

I am the only attorney who worked on this case. I am requesting an hourly rate of $500. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-

3

cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. Gonzalez v. Allied Concrete Indus., Inc., No. 14CV4771GRBSIL, 2021 WL 6015147 (E.D.N.Y. Dec. 10, 2021). I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers. Another court in this District recently approved $500 an hour for a named partner in a FLSA case. Canales v. Norwich Serv. Station Inc., No. 20-CV-4759(JMW), 2021 WL 5759727, at *5 (E.D.N.Y. Dec. 3, 2021).

We are also requesting $100 an hour for Katherine Tenempaguay and Matthew Vasquez, both Spanish speaking paralegals. Mr. Vazquez has a master's degree and had approximately a year of experience when working on this case. Ms. Tenempaguay is a college graduate and is our firm's current paralegal. Courts in this District have awarded $100 to paralegals. Canales, 2021 WL 5759727, at *5 (approving $137.50 per hour for a paralegal).

The hours expended are appropriate as well. Plaintiffs' counsel spent the following hours litigating this case, which are reflected in the timesheets attached as **Exhibit 3:**

| Name | Regular Hours | Regular Hourly Rate | Total |
| --- | --- | --- | --- |
| Michael Taubenfeld | 20.6 | $500.00 | $10,300.00 |
| Katherine Tenempaguay | 6.87 | $100.00 | $687.00 |
| Matthew Vasquez | 1.9 | $100.00 | $190.00 |
| Total | | | $11,177.00 |

The work performed in this case included meeting with clients, drafting the complaint, attending an initial conference, undergoing settlement discovery, drafting damages calculations, attending the mediation, negotiating the settlement and drafting the settlement documents, and drafting the settlement approval documents. The fees are therefore appropriate.

The costs are appropriate as well. Plaintiff's costs total $1,130.26 and are comprised of the $402 filing fee, $205 for service fees, $60.00 for interpretation services, $63.26 for FedEx and $400 for mediation costs. These costs are reasonable.

      \*      \*      \*

Accordingly, the Court should approve the settlement as fair and reasonable.

Thank you for your attention to the above.

        Respectfully Submitted,

        --------------/s/--------------
        Michael Taubenfeld

Encl.